## John Yoakley *et al.* v. John G. King *et al.*

1. CLERK. *Duties.* Where a settlement is made by an executor with the clerk of the county court, and the money found due is ordered by the court to be paid into the office of the clerk, the money may be paid out by the clerk without an order of the court.

2. SAME. *Sureties.* If a clerk of the county court is re-elected and qualified as his own successor, and has money belonging to the office on hand which has not been demanded during his first term of office, the sureties on his first bond will not be liable therefor.

### FROM SULLIVAN.

Appeal from the Chancery Court at Blountville. H. C. SMITH, Ch.

C. J. ST. JOHN for complainants.

W. V. DEADERICK, W. D. McCLOSKEY and N. M. TAYLOR for defendants.

McFARLAND, J., delivered the opinion of the court.

John C. Rutledge was elected clerk of the county court of Sullivan county, and inducted into office at the April sessions, 1860, of said court, and executed bonds with sureties in the usual form. At the expiration of his term of four years, having been re-elected, he again gave bonds at the April term, 1864, with a new set of sureties.

In the attitude in which the present cause comes before us, the only questions relate to the liability of the first set of sureties, in the sum of $457.32, paid to said John C. Rutledge on the 13th of December, 1862, by Peter Yoakley, Jr., executor of Peter Yoakley, Sr., deceased, as the shares of John Yoakley and E. B. Yoakley, as legatees of said estate.

The record shows that Peter Yoakley, the executor, had made a settlement with said clerk, which had been approved by the court, and he had been ordered at the September term, 1862, on the motion of one of said legatees, to pay the money into the office of the clerk by the first of January thereafter.

The defendants resist the demand upon various grounds, to-wit:

1. That the money was not lawfully paid to the clerk in his official capacity. Section 2307 of the Code expressly provides that after the settlement of an administration account, the county court may compel the administrator to pay the balance in his hands

into the office of the clerk, and enforce the order by execution or attachment for contempt. We have seen that the payment in this case was after the settlement by the administrator and in obedience to an order of the court. The payment was, therefore, clearly lawful, and the clerk rightfully entitled to receive the money.

2. It is objected that there has been no order to pay out the money, and the case of *Smalling & Wife* v. *King et al.,* 5 Lea, 585, is referred to. In that case, however, the money sought to be recovered was the proceeds of the sale of lands sold under a regular proceeding for the purpose, and it appeared from the allegations of the bill that the court ordering the sale had never adjudged to whom the proceeds belonged, or how they were to be paid out, and without this the clerk had no authority for paying out the money, and therefore was not in default for not doing so. In the present case, however, we apprehend that it is different. No suit had been instituted in the county court. The balance in the clerk's hands and to whom payable, appeared from his settlement. This settlement was approved by the court. The receipt given by the clerk shows that the money received by him was the shares of John and E. B. Yoakley. In such case no order of the court to pay out the money was necessary, but it was the duty of the clerk to do so upon demand by the parties thus shown to be entitled to it.

3. It is strongly insisted that the money was actually paid to the complainants. This argument is

based upon certain facts proven, which it is insisted raises the inference. The order on Rutledge to pay in the money was made at the instance of one of the legatees in September, 1862, and he was ordered to pay it in before the first of January, 1863, and he did pay it in on the 13th of December, 1862. One of said legatees lived in the county, and the other near by in an adjoining county, and they have continued to do so ever since. Rutledge is proven to have been a man of exceptionally high character for integrity and promptness. The court-house, including his office and all his official papers and vouchers, except one record book, was burned during an engagement between the belligerent forces of the late war in September, 1863, and there is no proof of a demand of the money until the latter part of the year 1865 or the first of the year 1866, Rutledge being then alive, and this bill was not filed until the 9th of November, 1870, after Rutledge's death.

These facts taken alone, do strongly tend to raise an inference against the justice of the demand, and that complainants are taking advantage of the death of Rutledge and the destruction of the records and papers of the office, to compel his sureties to pay the money. They attempt in the bill to explain the delay by showing that the reason therefor was that Rutledge's bonds as recorded were destroyed by the fire, and they had only recently discovered or obtained a copy from the office of the Secretary of State. The explanation is not altogether satisfactory.

But it is proven by Peter Yoakley, the man who

paid in the money, that by the authority of said leg-
atees he demanded the money of Rutledge in the latter
part of the year 1865 or early in the year 1866, as
before referred to, and Rutledge's reply, as proven by
him, may be taken as an admission that he had not
paid out the money, and if this be taken as true,
the defense of payment is disproven.

4. It is argued that the money was burned in
the burning of the court-house referred to, without
fault upon the part of Rutledge. There is proof in-
dicating that Rutledge saved some money from the
fire—the natural inference would be that if he saved
part he could have saved all—although in the con-
versation before referred to with Peter Yoakley, he
said the money in the court at the time of the fire
was burned. On this question the *onus* would be
upon the defendants, and the proof fails to make it
out.

*Lastly*—It is argued that at all events no default
of Rutledge has been shown in regard to this money
during the term for which the first set of sureties are
liable.

The charge in the bill of a conversion or misap-
propriation by Rutledge is simply that he failed to
pay over the money on demand, which demand, the
bill says, was made shortly after the payment of the
money to him, and continuously thereafter until Rut-
ledge's death. This is fully denied in the answer.
The only proof on this subject is the deposition of
Peter Yoakley, before referred to. He says: "After
the war, perhaps in the spring of 1866 or latter part

of 1865, I presented to John C. Rutledge, then in the clerk's office, an order from John and Endymion Yoakley for their share of the money that I had paid into said office for them, and Rutledge replied that the money that was in the office when the court-house was burned, was burned up, and he had no money on hand at that time, but that he had loaned some of it, and as soon as he could get it in or collect it, he would pay it." Again he says: " I don't know that John or Endymion ever made a de-mand on John C. Rutledge for their money." If the statement of Rutledge, that he had loaned part of the money be taken as an admission that he had con-verted it, there not appearing to have been any order to loan it, still there is nothing to show when this occurred, or that it was prior to the expiration of his first term, April term, 1864. There is, therefore, nothing to show that the money was not on hands at the commencement of the second term. Such is the presumption, in the absence of proof to the con-trary. Unless the clerk converted the money or failed to pay it on demand during the first term, and it remained in his hands when he became his own suc-cessor, then there was no default for which the first sureties are liable.

If, on the expiration of the first term, he had been succeeded by another, and had paid the money over to such successor, no default having previously oc-curred, the liability of his sureties would be at an end. The same result must follow the re-election of the same clerk and the giving of new bonds, provided

the money remain in his hands until the new bonds are given and the clerk is qualified for the second term.

The cases of *Bowen* v. *Evans*, 1 Lea, 107, and *Williams* v. *Bowman*, 3 Head, 682, relied upon to show that the first set of sureties are liable, were suits against the sureties of special commissioners, and stand upon wholly different grounds. That is to say, upon the ground that the office of special commissioner is wholly distinct from that of clerk, and does not terminate upon the termination of the office of clerk.

The result is, the decree of the chancellor is erroneous, and it will be reversed and the bill dismissed with costs.